IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMIE CUA CRUZ; and FLORO LORENZO CRUZ, JR., <br><br> Plaintiffs, <br><br> v. <br><br> JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, as successor in interest to WASHINGTON MUTUAL BANK F.A.; QUALITY LOAN SERVICE CORPORATION; CALIFORNIA RECONVEYANCE COMPANY; and DOES 1-100, <br><br> Defendants. | No. C 12-3219 CW <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Docket No. 34) AND SETTING A CASE MANAGEMENT CONFERENCE |

Defendants JPMorgan Chase Bank, N.A. (Chase) and California Conveyance Company (CRC) move to dismiss the first amended complaint (1AC) of Plaintiffs Armie Cua Cruz and Floro Lorenzo Cruz, Jr.[1] Plaintiffs oppose the motion. The Court took the motion under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS Defendants' motion in part and DENIES it in part.

BACKGROUND

The following allegations are taken from Plaintiffs' 1AC and documents of which Defendants ask the Court to take judicial notice, which Plaintiffs do not oppose.

---

[1] In their original complaint, Plaintiffs named Chase, CRC and Quality Loan Service Corporations as Defendants. In their 1AC, they renamed only Chase. Accordingly, Plaintiffs have voluntarily dismissed their claims against the other two Defendants.

On or about October 29, 2005, Plaintiffs entered into a loan agreement with Washington Mutual Bank, N.A. in connection with the refinancing of their home, located at 23 Pinnacle Street in South San Francisco, California. RJN, Ex. A; 1AC ¶ 10. Chase subsequently acquired Washington Mutual's interest in the loan.

In February 2009, Mr. Cruz was hospitalized for blood clots in his brain and, as a result of his health condition, was forced to stop working. 1AC ¶ 11. In March 2009, Plaintiffs began to feel the pressure of living on one income. Id. at ¶ 12. After making their March 2009 payment, Plaintiffs contacted Chase to inquire about a potential loan modification or other alternative to foreclosure. Id. Chase told Plaintiffs that there were no alternatives available and refused to consider them for a loan modification or any other foreclosure alternatives. Id. at ¶¶ 13-14. Plaintiffs were heartbroken at Chase's refusal. Id. at ¶ 13.

Due to their medical emergencies, Plaintiffs missed a few of their $4,500 monthly mortgage payments. Id. at ¶ 14.

On July 2, 2009, Plaintiffs received a Notice of Default stating that their account was in arrears for $22,870.71. Id. at ¶ 15. Despite the fact that Plaintiffs made their last payment in March 2009, the Notice of Default stated that "payment has not been made of," among other things, "the 01/01/2009 installment of principal and interest and all subsequent monthly installments of principal and interest." RJN, Ex. C; 1AC ¶ 22. Defendants recorded the Notice of Default on July 3, 2008. RJN, Ex. C.

Plaintiffs were shocked at the overestimation of the amount that Chase claimed they were in arrears. 1AC ¶ 16. However, they

2

began to pool money in order to reinstate their loan prior to any trustee's sale.  1AC ¶ 17.

On October 7, 2009, Defendants recorded a Notice of Trustee's Sale of Plaintiffs' home.  RJN, EX. D.  Defendants did not post the notice on Plaintiffs' door or anywhere on the property.  1AC ¶ 17.  Plaintiffs "only received the notice in the mail sometime later."  Id.

On October 26, 2009, the property was sold in a Trustee's Sale to Chase.  RJN, Ex. E.  Plaintiffs "were ready, willing, and able to tender payment to reinstate the loan prior to the Trustee's Sale."  1AC ¶ 1.

Plaintiffs initiated the instant lawsuit on June 20, 2012, asserting eleven claims against Defendants.  Docket No. 1.  Plaintiffs also requested a temporary restraining order on June 20, 2012, seeking to prevent Chase from enforcing a writ of possession the following day.  Docket No. 3.

On June 21, 2012, the Court found that Plaintiffs had not made a sufficient showing to obtain an ex parte temporary restraining order because, among other reasons, Plaintiffs had not submitted evidence that such a writ existed or that Chase intended to enforce it on that date.  Docket No. 7.  The Court set a briefing schedule for the motion, requiring Chase to file a response to Plaintiffs' motion for a temporary restraining order by 12:00 p.m. three court days after it has been served with certain documents and permitting Plaintiffs to file a reply by 12:00 p.m. the following court day.

On June 29, 2012, Chase and CRC filed an opposition to Plaintiffs' motion for a temporary restraining order.  Docket No.

3

13. They argued, among other things, that Plaintiffs' motion was moot because Chase had obtained possession of the property.

Plaintiffs did not file a reply in further support of their application for a temporary restraining order or otherwise challenge the argument that their motion was moot. On July 5, 2012, the Court denied as moot Plaintiffs' application for a temporary restraining order. Docket No. 17.

On July 16, 2012, Defendants moved to dismiss Plaintiffs' original complaint. Docket No. 18.

On August 1, 2012, Plaintiffs filed their 1AC. Docket No. 25. In their 1AC, Plaintiffs bring four claims against Chase: (1) wrongful foreclosure based on the inaccuracy in the Notice of Default and the failure to post the Notice of Trustee's Sale on Plaintiffs' door; (2) breach of contract for taking away Plaintiffs' right to reinstate the loan up until five days before the Trustee's sale by not apprising them of the date of the sale; (3) invasion of privacy by placing Plaintiffs in a false light based on Chase's representation to the credit bureaus that Plaintiffs were behind on their mortgage in January 2009 and thereafter; and (4) violation of California's Unfair Competition Law (UCL), California Business and Professions Code §§ 17200, et seq.

On August 6, 2012, the Court found Defendants' first motion to dismiss to be moot. Docket No. 26. Thereafter, Defendants filed the instant motion to dismiss the 1AC. Docket No. 34.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

4

Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to give the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.   Wrongful foreclosure

Defendants argue that Plaintiffs' claim for wrongful foreclosure in violation of California Civil Code section 2924, et seq., fails because Plaintiffs have not alleged sufficiently that

5

they were prejudiced by any such violation. Defendants also contend that Plaintiffs have not sufficiently alleged tender.

In response, Plaintiffs argue that they havesufficiently plead that Chase violated the statutory procedures for nonjudicial foreclosures and that they were harmed, because they were ready, willing and able to reinstate their loan had they been provided sufficient notice. Plaintiffs also argue that they have alleged tender properly.

"A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly, and a wrongful foreclosure claim must allege with sufficient facts that (1) proper procedure under §§ 2924 to 2924k was not followed; and (2) the plaintiff was prejudiced as a result." Garcia v. Fed. Home Loan Mortg. Corp., 2012 U.S. Dist. LEXIS 122436, at *10 (E.D. Cal.) (citing Knapp v. Doherty, 123 Cal. App. 4th 76 (2004)); see also Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (2011).

A. Prejudice

In the 1AC, Plaintiffs allege that Chase did not follow the proper statutory procedures for nonjudicial foreclosures because of inaccuracies in the Notice of Default and a failure to post the Notice of Default on the property. 1AC ¶¶ 22-23. In their opposition, Plaintiffs also state that Chase violated the statutory procedures by proceeding with a Trustee's sale less than twenty days after the Notice of Trustee's Sale was recorded, in violation of California Civil Code sections 2924b and 2924f; Plaintiffs request leave to amend to add this allegation. Opp. at 1. Defendants do not contest that Plaintiffs have sufficiently alleged that the nonjudicial foreclosure procedures were violated.

6

Instead, Defendants argue that Plaintiffs have not sufficiently alleged that they were prejudiced as a result of these procedural irregularities. In a wrongful foreclosure case, "prejudice or harm is not established unless Plaintiffs demonstrate that the foreclosure would have been averted but for the alleged deficiencies." <u>Christiansen v. Wells Fargo Bank</u>, 2012 U.S. Dist. LEXIS 142070, at *22 (N.D. Cal.) (internal quotation marks, citations and formatting omitted).

Because Plaintiffs alleged that they were able and willing to reinstate prior to the Trustee's sale but were denied the opportunity to do so by Chase's alleged failure to post the notice as required by law, they have sufficiently alleged prejudice. Under state law, defaulted borrowers have a right to reinstate their obligation "at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale." Cal. Civ. Code § 2924c(e). Defendants argue that Plaintiffs "merely claim that they were attempting to gather the money to reinstate, but have not conclusively alleged that even if they had notice, they would have been able to reinstate." Reply at 2. However, Plaintiffs in fact alleged that they "were ready, willing and able to tender payment to reinstate the loan prior to the Trustee's Sale," 1AC ¶ 1, and that, because Chase failed to post the Notice of Trustee's Sale on their property, they were not told when the Trustee's sale would actually take place and thus when the time period for their right to reinstate would expire, <u>id.</u> at ¶ 17. Defendants further argue that Plaintiffs have not plead prejudice because they admit that

7

they had actual notice of the Notice of Trustee's Sale, having received it in the mail, and thus could have reinstated prior to the sale. Mot. at 5. In fact, Plaintiffs alleged that they received the notice "in the mail sometime later." 1AC ¶ 17. They have not admitted that they received this notice prior to the Trustee's sale.

Finally, Defendants contend that Plaintiffs had notice that nonjudicial foreclosure proceedings were underway because they received the Notice of Default in July 2009 and that Plaintiffs had never tried to reinstate during the time period after they received that notice and the foreclosure sale. Mot. at 5. The Notice of Default, however, did not tell Plaintiffs when their right to reinstate expired. Without being served the Notice of Trustee's Sale, Plaintiffs were not aware that they had to exercise this right by a particular date or lose the opportunity to do so. They had a statutory right to reinstate until five days before the Trustee's sale. That Plaintiffs did not attempt to reinstate prior to this time does not mean that they would not have exercised this right by the expiration date had they been told of it, and they have alleged that they were willing and able to do so.

However, Plaintiffs have not alleged sufficiently any prejudice that they suffered from the claimed inaccuracies on the Notice of Default. The Notice of Default was issued on July 2, 2009 and Plaintiffs admit that they made their last $4,500 monthly payment in March 2009; thus, when the Notice was sent, Plaintiffs had missed a minimum of three payments, for April, May and June 2009, totaling at least $13,500. As a result, the errors alleged

in the Notice of Default consist of an incorrect amount of arrearages and an incorrect date of their first missed installment, and do not include the fact that they were in default. If Plaintiffs had been given proper notice of the deadline for reinstatement, they could have reinstated by proffering the amount that they believed was correct. See 4 Miller & Starr, Cal. Real Est. § 10:188 (3d ed.) ("When the beneficiary fails or refuses to inform the trustor or other person seeking reinstatement of the amount necessary to cure the default, or the person seeking reinstatement believes that the beneficiary's demand is excessive, reinstatement can be made by a tender of the amount which the person reinstating believes to be the proper amount."). Thus, absent additional allegations, Plaintiffs have not plead sufficiently how the foreclosure would have been averted but for the deficiencies in the Notice of Default.

B. Tender

"Under California law, in an action to set aside a trustee's sale, a plaintiff must demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'" Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1183-1184 (N.D. Cal. 2009) (quoting Karlsen v. American Sav. & Loan Assn, 15 Cal. App. 3d 112, 117 (1971), and Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984) ("[A]n action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security.")). "California district courts apply the tender rule in examining wrongful

9

foreclosure claims." Dubin v. BAC Home Loans Servicing, 2011 U.S. Dist. LEXIS 19921, at *6 (N.D. Cal.) (citations omitted). The tender rule "is premised upon the equitable maxim that a court of equity will not order that a useless act be performed." Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 579 (1984). The rationale is that, "without tender, a plaintiff cannot redeem the property and so unwinding a completed foreclosure sale would be 'useless.'" Tang v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 38642, at *16 (C.D. Cal.). "A plaintiff must (1) demonstrate a willingness to pay and (2) show the ability to pay." Pantoja, 640 F. Supp. 2d at 1184 (citing In re Worcester, 811 F.2d 1224, 1231 (9th Cir. 1987)). "A valid and viable tender offer is the plaintiff's ability to pay back what the plaintiff has received less interest and finance charges." Id. (citation omitted). "However, an offer to pay debt may not be required where it is inequitable." Id.

Plaintiffs do not dispute that tender is required. Instead, they argue that they sufficiently alleged tender. In the 1AC, Plaintiffs alleged that they were ready, willing and able to tender the amount required to reinstate the loan, not the full amount of the indebtedness. See 1AC ¶¶ 1, 17.

In Solomon v. Aurora Loan Servs. LLC, 2012 U.S. Dist. LEXIS 92368 (E.D. Cal.), the plaintiff alleged that "she had sufficient funds to pay all of her arrearage at the time that the foreclosure sale occurred" and that she "offers to pay all amounts due and owing so that the claimed default may be cured and Plaintiff may be reinstated to all former rights and privileges under the subject deed of trust." Id. at *26. The court found that, in

10

light of these allegations and those that her default was due to the defendant's misrepresentations, it did "not appear that it would be useless to set aside the foreclosure sale and reinstate plaintiff's loan." Id.

Similarly, here, Plaintiffs have alleged that they were ready and willing to tender the payment required to reinstate the loan prior to the Trustee's sale but that they were unable to do so because of Chase's failure to tell them the date of the sale. Under these circumstances, it appears at this stage of the litigation that it would not be useless to set aside the foreclosure sale and reinstate Plaintiffs' loan. Thus, an allegation of full tender is not required.

C. Summary

For the reasons set forth above, the Court GRANTS in part Defendants' motion to dismiss this claim and dismisses this claim to the extent it is premised on claimed inaccuracies on the Notice of Default. The Court DENIES the motion to dismiss the claim to the extent it is premised on Chase's alleged failure to post the notice as required by law.

Plaintiffs are granted leave to amend to plead prejudice from the incorrect Notice of Default. Plaintiffs are also granted leave to plead that the Trustee's sale improperly took place less than twenty days after the recording of the Notice of Trustee's Sale if they can truthfully plead that they were prejudiced by this deficiency.

II. Breach of Contract

Section 19 of the Deed of Trust provides that the borrower has the right to reinstate the loan after acceleration until five

11

days before the sale of the property pursuant to the power of sale in the deed.  RJN, Ex. A ¶ 19.  Plaintiffs allege that Chase breached this section by not apprising them of the date of Trustee's sale.  1AC ¶ 28.

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach.  <u>Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n.6 (2004).

Defendants argue that this claim is deficient for several reasons.  First, they contend that Plaintiffs cannot assert a breach of contract claim because they failed to perform their obligations under the contract when they defaulted on the loan.  Mot. at 7.  However, this section of the deed presumes that Plaintiffs have defaulted on their payments and sets forth bargained-for provisions governing the parties' conduct in the event of such a breach.  Because this section cannot be invoked unless Plaintiffs were in default, Defendants cannot rely on Plaintiffs' default to escape their obligations under this section regarding their conduct in the event of default.

Second, Defendants argue that Plaintiffs have not alleged sufficiently that there was a breach because Plaintiffs were not precluded from exercising their rights under this section simply because Chase did not post the Notice of Default on their property.  Again, Plaintiffs respond that Chase's failure to give them notice of the date of the sale deprived them of their right to reinstate within five days before that date.

12

Although Chase may not have explicitly denied Plaintiffs their right to reinstate, Plaintiffs have sufficiently alleged that Chase interfered with their exercise of this right and failed to provide the notice that they needed to enable them to do so. "There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." Harm v. Frasher, 181 Cal. App. 2d 405, 417 (1960). "A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing." McNeary-Calloway v. JP Morgan Chase Bank, N.A., 2012 U.S. Dist. LEXIS 40989, at *63 (N.D. Cal.) (citing Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 55 (2002)). "This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." Harm, 181 Cal. App. 2d at 417. However, it "cannot contradict the express terms of a contract" and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of the parties' agreement." McNeary-Calloway, 2012 U.S. Dist. LEXIS 40989, at *64 (internal quotation marks, citations and formatting omitted).

As explained above, Plaintiffs have alleged sufficiently that Chase interfered with their ability to obtain the benefits of section 19 of the Deed of Trust by failing to tell them of the date of the Trustee's sale. Accordingly, the Court denies Defendants' motion to dismiss this claim.

13

III. False Light Invasion of Privacy

Plaintiffs allege that Chase invaded their privacy by placing them in a false light when it reported to the credit bureaus that they were behind on their mortgage in January 2009, although they made their last payment two months later in March 2009.

Defendants move to dismiss this claim on the basis that, because the claim arose in 2009 and the statute of limitations for the claim is two years, Plaintiffs were required to file suit by 2011 and their claim is now barred. Defendants also argue that Plaintiffs cannot rely on the delayed discovery rule to extend the statute of limitations because they could have easily discovered the credit reports earlier with reasonable diligence and should have known that there would have been an adverse entry as of at least April 2009 when they admittedly stopped making their mortgage payments.

Plaintiffs do not deny that the statute of limitations has run on this claim based on the face of the 1AC, but request leave to amend to plead that they only learned of the wrongdoing "sometime after" it occurred.

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988); see also Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005) ("An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."). "In order to rely on the

14

discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" Id. at 808 (citation omitted).

    This case was filed on June 20, 2012. Thus, for the discovery rule to help Plaintiffs, they would need to show that they did not discover or have reason to discover the erroneous entry on their credit reports until at least June 20, 2010. Plaintiffs need not make this showing through the date of filing of this action, as Defendants suggest. See Reply at 5 ("the credit reports would have been made by 2009 and this case was not filed until June 2012. There is no conceivable set of circumstances under which it would be reasonable for someone not to check their credit for three and a half years."). Further, the Court declines to find that, as a matter of law, the failure to check one's credit report for approximately a year and a half is per se unreasonable.[2]

    Accordingly, the Court GRANTS Defendants' motion to dismiss this claim and grants Plaintiffs leave to amend to show the time

---

[2] For example, the Fair Credit Reporting Act (FCRA) statute of limitations provides that claims under that statute must be brought "not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Thus, the FCRA appears to contemplate as reasonable that individuals may not check their credit reports for up to three years.

15

and manner of their discovery of this violation and that such a delay was reasonable.

IV. Violation of the UCL

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim premised on unlawful business acts or practices. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

Defendants move to dismiss Plaintiffs' UCL claim under the unlawful, unfair and fraudulent prongs. Plaintiffs defend only the sufficiency of their allegations under the unlawful prong.

Because Plaintiffs have alleged sufficiently claims for wrongful foreclosure and breach of contract as discussed above, they have also alleged sufficiently a claim for violation of the UCL based on unlawful business acts or practices. Thus, the Court DENIES Defendants' motion to dismiss the UCL claim under the unlawful prong. However, the Court GRANTS as unopposed Defendants' motion to dismiss the UCL claim to the extent it arises under the unfair or fraudulent prong.

16

CONCLUSION

For the reasons set forth above, the Court GRANTS in part Defendants' motion to dismiss and DENIES it in part (Docket No. 34). The Court DENIES Defendants' motion to dismiss the claims for wrongful foreclosure based on the alleged failure to post the notice, breach of contract and violation of the UCL under the unlawful prong. The Court GRANTS Defendants' motion to dismiss the claims for wrongful foreclosure based on the alleged deficiencies in the Notice of Default, false light invasion of privacy and violation of the UCL under the unfair and fraudulent prongs.

Within fourteen days of the date of this Order, Plaintiffs may file a second amended complaint to remedy the deficiencies identified above in their claims for wrongful foreclosure and false light invasion of privacy. Plaintiffs also may add allegations that the Trustee's sale improperly took place less than twenty days after the recording of the Notice of Trustee's Sale and how they were harmed by this deficiency. Plaintiffs may not add further claims or allegations not authorized by this Order.

If Plaintiffs file a second amended complaint, Chase shall respond to it within fourteen days after it is filed. If Chase moves to dismiss the second amended complaint, Plaintiffs shall respond to the motion within fourteen days after it is filed. Chase's reply, if necessary, shall be due seven days thereafter. Any motion to dismiss will be decided on the papers.

17

1    The Court SETS a case management conference for Thursday,
2 January 10, 2013 at 2:00 p.m.
3    IT IS SO ORDERED.

5 Dated: 10/17/2012
                                    CLAUDIA WILKEN
                                    United States District Judge