IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARMIE CUA CRUZ; and FLORO LORENZO CRUZ, JR.,

        Plaintiffs,

    v.

JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, as successor in interest to WASHINGTON MUTUAL BANK F.A.; QUALITY LOAN SERVICE CORPORATION; CALIFORNIA RECONVEYANCE COMPANY; and DOES 1-100,

        Defendants.

No. C 12-3219 CW

ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS (Docket No. 48)

_____/

    Defendants JPMorgan Chase Bank, N.A. (Chase) and California Conveyance Company (CRC) move to dismiss the second amended complaint (2AC) of Plaintiffs Armie Cua Cruz and Floro Lorenzo Cruz, Jr.[1]  Plaintiffs oppose the motion.  The Court took the motion under submission on the papers.  Having considered the papers submitted by the parties, the Court GRANTS Defendants' motion in part and DENIES it in part.

_____

[1] In their original complaint, Plaintiffs named Chase, CRC and Quality Loan Service Corporations as Defendants.  In their 1AC, they renamed only Chase.  Accordingly, Plaintiffs have voluntarily dismissed their claims against the other two Defendants.

BACKGROUND

I.   Factual allegations

The following allegations are taken from Plaintiffs' 2AC and documents of which Defendants ask the Court to take judicial notice, which Plaintiffs do not oppose.

On or about October 29, 2005, Plaintiffs entered into a loan agreement with Washington Mutual Bank, N.A. in connection with the refinancing of their home, located at 23 Pinnacle Street in South San Francisco, California.  Request for Judicial Notice (RJN), Docket No. 34, Ex. A; 2AC ¶¶ 9-10.  Chase subsequently acquired Washington Mutual's interest in the loan.

In February 2009, Mr. Cruz was hospitalized for blood clots in his brain and, as a result of his health condition, was forced to stop working.  2AC ¶ 11.  In March 2009, Plaintiffs began to feel the pressure of living on one income.  Id. at ¶ 12.  After making their March 2009 payment, Plaintiffs contacted Chase to inquire about a potential loan modification or other alternative to foreclosure.  Id.  Chase told Plaintiffs that there were no alternatives available and refused to consider them for a loan modification or any other foreclosure alternatives.  Id. at ¶¶ 13-14.  Plaintiffs were heartbroken at Chase's refusal.  Id. at ¶ 13.

Due to their medical emergencies, Plaintiffs were no longer able to afford their $4,500 per month mortgage payments.  Id. at ¶ 14.

On July 2, 2009, Plaintiffs received a Notice of Default stating that their account was in arrears for $22,870.71.  Id. at ¶ 15.  Despite the fact that Plaintiffs made their last payment in

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

March 2009 "and were only a couple of months late," the Notice of Default stated that "payment has not been made of," among other things, "the 01/01/2009 installment of principal and interest and all subsequent monthly installments of principal and interest." RJN, Ex. C; 2AC ¶ 23.  Defendants recorded the Notice of Default on July 3, 2008.  RJN, Ex. C.

Plaintiffs were shocked at the overestimation of the amount that Chase "claimed they owed for one month of non-payment of a $4,500 per month loan." 2AC ¶ 16.[2]  However, they began to pool money in order to reinstate their loan prior to any trustee's sale.  Id.

On October 7, 2009, Defendants recorded a Notice of Trustee's Sale of Plaintiffs' home.  Id. at ¶ 18.  Defendants did not post the notice on Plaintiffs' door or anywhere on the property.  Id. at ¶¶ 17, 24.  Plaintiffs "only received the notice in the mail sometime later." Id. at ¶ 17.

On October 26, 2009, less than twenty after the recording of the Notice of Trustee's Sale, the property was sold in a Trustee's Sale to Chase.  Id. at ¶ 18; RJN, Ex. E.  Plaintiffs "were ready, willing, and able to tender payment to reinstate the loan prior to

_____

[2] In their first amended complaint (1AC), Plaintiffs alleged that, as a result of "their medical emergencies, Plaintiffs missed a few of their $4,500 per month mortgage" payments and they were "shocked at the gross estimation of how much Defendant Chase claimed they owed for a few months of non-payment of a $4,500 per month loan." 1AC ¶¶ 14, 16.  These two references to "a few" months of missed mortgage payments were removed in the 2AC and in paragraph sixteen of the 2AC, Plaintiffs refer instead to "one month of non-payment." 2AC ¶ 16.  However, elsewhere in the 2AC, Plaintiffs continue to allege that they "made their last payment in March 2009" and were "a couple of months late." 2AC ¶ 23.

the Trustee's Sale," but were not provided notice of the sale and were thus not given a chance to reinstate.   2AC ¶¶ 1, 18, 22.

II.   Procedural history

Plaintiffs initiated the instant lawsuit on June 20, 2012, asserting eleven claims against Defendants.   Docket No. 1. Plaintiffs also requested a temporary restraining order on June 20, 2012, seeking to prevent Chase from enforcing a writ of possession the following day.   Docket No. 3.

On June 21, 2012, the Court found that Plaintiffs had not made a sufficient showing to obtain an ex parte temporary restraining order because, among other reasons, Plaintiffs had not submitted evidence that such a writ existed or that Chase intended to enforce it on that date.   Docket No. 7.   The Court set a briefing schedule for the motion, requiring Chase to file a response to Plaintiffs' motion for a temporary restraining order by 12:00 p.m. three court days after it had been served with certain documents and permitting Plaintiffs to file a reply by 12:00 p.m. the following court day.

On June 29, 2012, Chase and CRC filed an opposition to Plaintiffs' motion for a temporary restraining order.   Docket No. 13.   They argued, among other things, that Plaintiffs' motion was moot because Chase had obtained possession of the property.

Plaintiffs did not file a reply in further support of their application for a temporary restraining order or otherwise challenge the argument that their motion was moot.   On July 5, 2012, the Court denied as moot Plaintiffs' application for a temporary restraining order.   Docket No. 17.

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

On July 16, 2012, Defendants moved to dismiss Plaintiffs'
original complaint.  Docket No. 18.

On August 1, 2012, Plaintiffs filed their 1AC.  Docket No.
25.  In their 1AC, Plaintiffs brought four claims against Chase:
(1) wrongful foreclosure based on the inaccuracy in the Notice of
Default and the failure to post the Notice of Trustee's Sale on
Plaintiffs' door; (2) breach of contract for thwarting Plaintiffs'
right to reinstate the loan up to five days before the Trustee's
sale by not apprising them of the date of the sale; (3) invasion
of privacy by placing Plaintiffs in a false light based on Chase's
representation to the credit bureaus that Plaintiffs were behind
on their mortgage in January 2009 and thereafter; and
(4) violation of California's Unfair Competition Law (UCL),
California Business and Professions Code §§ 17200, et seq.

On August 6, 2012, the Court found Defendants' first motion
to dismiss to be moot.  Docket No. 26.   Thereafter, Defendants
moved to dismiss the 1AC.  Docket No. 34.

On October 17, 2012, the Court granted in part Defendants'
motion to dismiss the 1AC and denied it in part.  Docket No. 41.
The Court dismissed in part Plaintiffs' wrongful foreclosure claim
to the extent that it was based on claimed inaccuracies in the
Notice of Default, holding that Plaintiffs had not adequately
alleged prejudice from those inaccuracies, and granted Plaintiffs
leave to amend to correct this deficiency and to add allegations
that the Trustee's sale improperly took place less than twenty
days after the recording of the Notice of the Trustee's Sale and
that they were prejudiced by this.  The Court otherwise denied the
motion to dismiss the wrongful foreclosure claim, finding that

Plaintiffs had properly plead that they were prejudiced by Chase's failure to post the Notice of Default as required by law and that an allegation of full tender was not required under the circumstances of the case.  The Court dismissed Plaintiffs' false light invasion of privacy claim because the statute of limitations had run based on the face of the 1AC and granted Plaintiffs leave to amend to plead facts supporting the application of the discovery rule for delayed accrual of that cause of action. Finally, the Court denied the motion to dismiss Plaintiffs' claims for breach of contract and violation of the UCL under the unlawful prong of that law but dismissed the UCL claim to the extent it arose under the unfair or fraudulent prong.

On October 25, 2012, Plaintiffs filed their 2AC.  Docket No. 45.  In the 2AC, Plaintiffs have made certain changes to their wrongful foreclosure and false light invasion of privacy claims and have maintained in their UCL claim that Chase's conduct "constitutes unlawful, unfair and/or fraudulent business practices."

On November 8, 2012, Defendants filed the instant motion to dismiss the 2AC, seeking dismissal of the amended wrongful foreclosure and false light invasion of privacy claims and of the UCL claim to the extent it is based on unfair and fraudulent business practices.[3]  Docket No. 48.

_____

[3] In their motion, Defendants also stated that they sought dismissal of the claim under the unlawful prong of the UCL.  In their reply, Defendants acknowledge that the Court denied their earlier motion to dismiss this portion of Plaintiffs' claim, state that they mistakenly included this in the instant motion and ask the Court to "disregard the Motion with respect to the unlawful prong of the UCL claim."  Reply at 1.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Wrongful Foreclosure

Defendants move to dismiss this claim to the extent that it is premised on the alleged inaccuracies in the Notice of Default. Defendants do not challenge the sufficiency of the new allegations that Trustee's sale improperly took place less than twenty days after the recording of the Notice of the Trustee's Sale and that Plaintiffs were prejudiced as a result.

Instead, Defendants argue that, in the 2AC, Plaintiffs have still not alleged sufficiently that they were prejudiced by the purported mistakes in the Notice of Default. In the 2AC, Plaintiffs plead that they were prejudiced by these inaccuracies

"because they were unaware of the amount they would need to tender in order to reinstate."  2AC ¶ 23.  In their opposition, Plaintiffs contend that they were prejudiced because, "[w]ithout the Notice of Trustee's sale, the Cruzs were not on notice that they even needed to request a reinstatement amount."  Opp. at 5.

In a wrongful foreclosure case, "prejudice or harm is not established unless Plaintiffs demonstrate that the foreclosure would have been averted but for the alleged deficiencies." Christiansen v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS 142070, at *22 (N.D. Cal.) (internal quotation marks, citations and formatting omitted).

In the prior order, the Court found that Plaintiffs had alleged sufficiently that they were prejudiced by the failure to serve properly the Notice of Trustee's Sale because, without that notice, they were not aware of the deadline by which they had to exercise their right to reinstate.  On the other hand, the Court held that Plaintiffs had not sufficiently alleged any prejudice that they suffered from the claimed inaccuracies in the Notice of Default, which were limited to the amount of arrearages that they owed and the date on which they missed their first installment payment, and did not include the fact that they were in default.

Plaintiffs have not remedied this deficiency.  Even if Plaintiffs "were unaware of the amount they would need to tender in order to reinstate" because of the incorrect amount stated in the Notice of Default, 2AC ¶ 23, if they had been given proper notice of the deadline to do so, they "could have reinstated by proffering the amount that they believed was correct," as explained by the Court previously, Docket No. 41, 9 (citing 4

United States District Court
For the Northern District of California

Miller & Starr, <u>Cal. Real Est.</u> § 10:188 (3d ed.) ("When the beneficiary fails or refuses to inform the trustor or other person seeking reinstatement of the amount necessary to cure the default, or the person seeking reinstatement believes that the beneficiary's demand is excessive, reinstatement can be made by a tender of the amount which the person reinstating believes to be the proper amount.")).  Thus, this deficiency was not alleged properly to be a "but for" cause of the foreclosure.  Further, the Notice of Default itself provides instructions to contact Chase regarding the amount due.  <u>See</u> RJN, Ex. C ("Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. . . . [T]o find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association at 7301 BAYMEADOWS WAY, JACKSONVILLE, FL 32256, (877) 926-8937.").

Accordingly, the Court GRANTS Defendants' motion to dismiss the wrongful foreclosure claim to the extent that it is premised on claimed inaccuracies on the Notice of Default.  Because the Court has previously granted leave to amend to remedy this deficiency and Plaintiffs have been unable to do so, this dismissal is without leave to amend.

II.  False Light Invasion of Privacy

Defendants move to dismiss this claim on the basis that Plaintiffs have not sufficiently plead that the delayed discovery rule should extend the statute of limitations, which otherwise would be two years.

As the Court explained in the prior order, "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988); see also Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005) ("An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."). "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" Id. at 808 (citation omitted).

In the 1AC, Plaintiffs had not attempted to plead that this rule applied to their claim, and in their opposition to the motion to dismiss the 1AC, Plaintiffs did not deny that the statute of limitations had run on the claim on the face of that pleading and had requested leave to amend to allege that they had not checked their credit and discovered the violation until sometime after the report had been made. In reply, Defendants argued that leave to amend should not be granted because "the credit reports would have been made by 2009 and this case was not filed until June 2012," and there was "no conceivable set of facts under which it would be reasonable for someone not to check their credit for three and a half years." Docket No. 39, 5.

10

In the prior order, the Court rejected Defendants' argument and granted Plaintiffs' request for leave to amend.  The Court held that, because the discovery rule postpones when the statute of limitations begins to run, Plaintiffs were not required to show that they had not discovered or had reason to discover the erroneous credit report until the date of filing of this action, but instead were required to make such a showing through June 20, 2010, two years before the filing of the action.  Docket No. 41, 15.  The Court also declined "to find that, as a matter of law, the failure to check one's credit report for approximately a year and a half is per se unreasonable," such that amendment would be futile.  Id.  In so holding, the Court noted that the statute of limitations for a claim under the Fair Credit Reporting Act (FCRA), a statute not at issue in this case but which addresses errors in credit reports, provides that claims under that statute must be brought "not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." Id. at 15 n.2 (quoting 15 U.S.C. § 1681p).  Thus, the Court noted that "the FCRA appears to contemplate as reasonable that individuals may not check their credit reports for up to three years."  Id.

In the 2AC, to support the application of the delayed discovery rule, Plaintiffs plead that

> Plaintiffs could not reasonably have discovered that their credit had been damaged until after the reports were made.  Plaintiffs did not discover the damage to their credit until nearly one [and] a half years after the false reports were made, as they did not check their

> credit yearly.  Further, a reasonable person does not
> check their credit yearly, and it is not unreasonable
> that Plaintiffs did not check their credit for one [and]
> a half years after the false reports were made.

2AC ¶ 36.

Defendants argue that Plaintiffs have not specifically plead facts to show that they were unable to make earlier discovery despite reasonable diligence, as required by California courts, and have instead made only conclusory statements that they acted reasonably.  Defendants also argue that, although individuals who timely pay their creditors may not have reason to suspect that adverse or incorrect information is being reported about their creditworthiness to a credit bureau and thus may not check their credit reports often, individuals who have admitted that they were in default "have more reason to act diligently in ensuring that their status is being reported correctly so as to minimize any damage to their credit scores."  Mot. at 7; Reply at 3.

In response, Plaintiffs argue that they have plead that the wrongdoing occurred in January or March of 2009 and that they did not discover it for one and half years until they subsequently checked their credit report.  Plaintiffs appear to suggest that the Court has already held that this length of delay was reasonable in the prior order and thus that more detailed pleading was unnecessary.  However, in the prior order, the Court did not hold that it was per se reasonable for individuals not to check their credit reports for one and half years.  Instead, the Court declined to find, as a matter of law, that it was per se unreasonable for individuals to wait that long, such that Plaintiffs should be denied an opportunity to amend their pleading and attempt to show that their delay here was reasonable.

1    Regardless, at this stage, Plaintiffs' allegations are
2 sufficient.  Resolution of the statute of limitations is generally
3 a question of fact reserved for the trier of facts.  <u>Jolly</u>, 44
4 Cal. 3d at 1112.  When a motion to dismiss is based on the running
5 of a statute of limitations, the motion can be granted "only if
6 the assertions of the complaint, read with the required
7 liberality, would not permit the plaintiff to prove that the
8 statute was tolled."  <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677,
9 682 (9th Cir. 1980) (citation omitted).  Here, although Plaintiffs
10 will be required ultimately to prove that they acted with
11 reasonable diligence in investigating the factual basis of their
12 claim, the allegations made in the 2AC would permit Plaintiffs to
13 prove that they did so and that the statute of limitations was
14 tolled for a period of time sufficient that it did not bar the
15 claim.

16    Accordingly, the Court DENIES Defendants' motion to dismiss
17 this claim.

18 III. Violation of the UCL

19    Defendants move to dismiss Plaintiffs' UCL claim under the
20 unfair and fraudulent prongs.  Plaintiffs respond that their UCL
21 claim is "tethered to Defendant's violations of California law as
22 set forth in the SAC" and do not purport to be asserting a claim
23 under the unfair and fraudulent prongs of the statute.  Opp. at
24 6-7.  The Court also previously granted as unopposed Defendants'
25 motion to dismiss this claim to the extent it was asserted under
26 those two prongs and did not allow Plaintiffs leave to amend it.
27 Thus, to the extent that Plaintiffs have re-asserted the UCL claim
28 under the unfair and fraudulent prongs, the Court GRANTS as

13

unopposed Defendants' motion to dismiss the claim.  This holding
does not affect Plaintiffs' UCL claim under the unlawful prong.

CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants'
motion to dismiss the wrongful foreclosure claim to the extent
that it is premised on claimed inaccuracies on the Notice of
Default and the UCL claim under the unfair and fraudulent prongs.
Dismissal of these claims is without leave to amend.  The Court
DENIES Defendants' motion to dismiss the false light invasion of
privacy claim.

The case management conference currently set for Thursday,
March 7, 2013 at 2:00 p.m. is maintained.

IT IS SO ORDERED.

Dated: 1/3/2013

CLAUDIA WILKEN
United States District Judge